IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LABORERS' PENSION FUND, LABORERS' WELFARE FUND OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, THE CHICAGO LABORERS' DISTRICT COUNCIL RETIREE HEALTH AND WELFARE FUND and CATHERINE WENSKUS, not individually, but as Administrator of the Funds, | ) ) ) ) ) ) ) ) ) ) | Case No.: 18 C 7398 |
| Plaintiffs, | ) ) | Judge |
| v. | ) ) | |
| INTERSTATE CURB & CONCRETE CUTTING, INC., an Illinois Corporation | ) ) ) | |
| Defendant. | ) ) | |

## COMPLAINT

Plaintiffs, Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, the Chicago Laborers' District Council Retiree Health and Welfare Fund, and Catherine Wenskus, Administrator of the Funds (hereinafter collectively "Funds"), by their attorneys, Patrick T. Wallace, Amy Carollo, Kate Mosenson, and G. Ryan Liska, for their Complaint against Defendant Interstate Curb & Concrete, Inc., an Illinois corporation, state as follows:

## COUNT I

**(Failure To Pay Benefit Contributions Revealed as Delinquent Pursuant to an Audit)**

1.      Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and

(2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a), 28 U.S.C. §1331, and federal common law.

2.  Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

3.  The Funds are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA.  29 U.S.C. §1002(3) and 37(A).  They are established and maintained pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA.  29 U.S.C. § 186(c)(5).  The Funds have offices and conduct business within this District.

4.  Plaintiff Catherine Wenskus ("Wenskus") is the Administrator of the Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Funds in the collection of employer contributions owed to the Funds and to the Construction and General District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union").  With respect to such matters, Wenskus is a fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

5.  Defendant Interstate Curb & Concrete Cutting, Inc., (hereinafter "Company"), does business within this District and was at all times relevant herein an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

6.     The Union is a labor organization within the meaning of 29 U.S.C. §185(a). The Union and the Company have been parties to successive collective bargaining agreements, the most recent of which became effective June 1, 2017 ("Agreement"). (A copy of the Company's Assignment of Collective Bargaining Rights executed by the Company which adopts and incorporates a Master Agreement between the Union and various employer associations, and also binds the Company to the Funds' respective Agreements and Declarations of Trust, is attached hereto as Exhibit A.)

7.     The Funds have been duly authorized by the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund (the "Training Fund"), the Midwest Construction Industry Advancement Fund ("MCIAF"), the Chicagoland Construction Safety Council (the "Safety Fund"), the Laborers' Employers' Cooperation and Education Trust ("LECET"), the Midwest Construction Industry Advancement Fund (the "MCIAF"), the CDCNI/CAWCC Contractors' Industry Advancement Fund (the "Wall & Ceiling Fund"), the CISCO Uniform Drug/Alcohol Abuse Program ("CISCO"), the Laborers' District Council Labor Management Committee Cooperative ("LCDMC"), the CARCO Industry Advancement Fund ("CARCO"), the Underground Contractors Association ("UCA"), Illinois Small Pavers Association ("ISPA"), and the Chicago Area Independent Construction Association ("CAICA") to act as an agent in the collection of contributions due to those funds.

8.     The Agreement and the Funds' respective Agreements and Declarations of Trust obligate the Company to make contributions on behalf of its employees covered by the Agreement, and to submit monthly remittance reports in which the Company, *inter alia*, identifies the employees covered under the Agreements and the amount of contributions to be remitted to the Funds on behalf of each covered employee. Pursuant to the terms of the

Agreement, and the Funds' respective Agreements and Declarations of Trust, contributions which are not submitted in a timely fashion are assessed 20 percent liquidated damages plus interest.

9.     The Agreement and the Funds' respective Agreements and Declarations of Trust require the Company to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance.

10.     The Agreement requires the Company to obtain and maintain a surety bond to guaranty the payment of future wages, pension and welfare benefits.

11.     An audit of Company's books and records for the time period of July 1, 2016 through May 31, 2018 revealed that Company performed covered work during the audit period, but that notwithstanding the obligations imposed by the Agreement, and the Funds' respective Agreements and Declarations of Trust, Company has:

(a)     failed to report and pay contributions in the amount of $1,413.82 owed to Plaintiff Laborers' Pension Fund for the audit period of July 1, 2016 through May 31, 2018, thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer the Fund and jeopardizing the pension benefits of the participants and beneficiaries;

(b)     failed to report and pay contributions in the amount of $1,214.63 owed to Plaintiff Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity for the period of July 1, 2016 through May 31, 2018, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

4

(c) failed to report and pay contributions in the amount of $519.08 owed to Plaintiff Chicago Laborers' District Council Retiree Health and Welfare Fund for the period of July 1, 2016 through May 31, 2018, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(d) failed to report and pay contributions in the amount of $60.77 owed to Laborers' Training Fund for the period of July 1, 2016 through May 31, 2018, thereby depriving the Laborers' Training Fund of contributions, income and information needed to administer the Fund and jeopardizing the training fund benefits of the participants and beneficiaries;

(e) failed to report and pay contributions in the amount of $20.63 owed to Laborers' District Council Labor Management Committee Cooperative ("LDCLMCC") for the audit period of July 1, 2016 through May 31, 2018, thereby depriving the LDCLMCC of contributions, income and information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries;

(f) failed to report and pay contributions in the amount of $9.70 owed to Illinois Small Pavers Association ("ISPA") for the audit period of July 1, 2016 through May 31, 2018, thereby depriving the ISPA of contributions, income and information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries; and

(g) failed to report and pay contributions in the amount of $8.50 owed to Laborers' Employers' Cooperation and Education Trust ("LECET") for the audit of July 1, 2016 through May 31, 2018, thereby depriving the LECET of contributions, income and information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries.

5

A true and accurate copy of the audit and audit summary sheet are attached hereto as Exhibits B and C respectively.

12.     Under the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust, Company òwes liquidated damages plus interest on all unpaid contributions revealed by the audit for the period of July 1, 2016 through May 31, 2018.

13.     Under the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust, Company is liable for the costs of any audit which reveals unpaid contributions. Accordingly, Company owed the Funds $1,148.68 in audit costs for the audit for the period of July 1, 2016 through May 31, 2018. *See* Exhibits B and C.

14.     Company's actions in failing to submit payment upon the audit to which it submitted its books and records violate Section 515 of ERISA, 29 U.S.C. §1145.

15.     Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, the terms of the Agreement and the Funds' respective Trust Agreements, Company is liable to the Funds for unpaid contributions, as well as interest and liquidated damages on the unpaid contributions, audit costs, and reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendant Interstate Curb & Concrete Cutting, Inc.:

a.     entering judgment in sum certain in favor of the Funds and against Company on the amounts due and owing pursuant to the audit for the period of July 1, 2016 through May 31, 2018, including contributions, interest, liquidated damages, audit costs, and Plaintiffs' reasonable attorneys' fees and costs; and

    b.      awarding Plaintiffs any further legal and equitable relief as the Court deems

appropriate.

**COUNT II**

**(Failure to Pay Union Dues Revealed as Delinquent Pursuant to an Audit)**

    16.     Plaintiffs reallege paragraphs 1 through 15 of Count I as though fully set forth

herein.

    17.     Pursuant to agreement, the Funds have been duly designated to serve as collection

agents for the Union in that the Funds have been given the authority to collect from employers

union dues which have been or should have been deducted from the wages of covered

employees.

    18.     Notwithstanding the obligations imposed by the Agreement, Company performed

covered work during the audit period of July 1, 2016 through May 31, 2018, and Company failed

to withhold and/or submit payment of $119.44 in union dues that were or should have been

withheld from the wages of employees for the period of July 1, 2016 through May 31, 2018,

thereby depriving the Union of information and income. *See* Exhibits B and C.

    19.     Pursuant to the Agreement, Company owes liquidated damages on all late or

unpaid dues as revealed by the audit for the period of July 1, 2016 through May 31, 2018, plus

audit costs, interest and reasonable attorneys' fees and costs as the Union's collection agent, and

such other legal and equitable relief as the Court deems appropriate.

    WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against

Defendant Interstate Curb & Concrete Cutting, Inc.:

    a.      entering judgment in sum certain in favor of the Funds and against Company on

the amounts due and owing pursuant to the audit for the period of July 1, 2016 through May 31,

7

2018, including dues, liquidated damages, audit costs, and Plaintiffs' reasonable attorneys' fees and costs; and

      b.      awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

**COUNT III**

**(Failure to Submit Reports and Pay Employee Benefit Contributions**

      20.      Plaintiffs reallege paragraphs 1 through 15 of Count I as though fully set forth herein.

      21.      Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, the Company has:

      (a)      failed to submit reports and/or pay all contributions to Plaintiff Laborers' Pension Fund for the period of September 2018 forward, thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer the Fund and jeopardizing the pension benefits of the participants and beneficiaries;

      (b)      failed to submit reports and/or pay all contributions to Plaintiff Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity for the period of September 2018 forward, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

      (c)      failed to submit reports and/or pay all contributions to Chicago Laborers' District Council Retiree Health and Welfare Fund for the period of September 2018 forward, thereby depriving the Retiree Welfare Fund of contributions, income and information needed to

8

administer the Fund and jeopardizing the health and welfare benefits of the participants and

beneficiaries;

(d)     failed to submit reports and/or pay all contributions to Laborers' Training Fund

for the period of September 2018 forward, thereby depriving the Laborers' Training Fund of

contributions, income and information needed to administer the Fund and jeopardizing the

training fund benefits of the participants and beneficiaries; and

(e)     failed to submit reports and/or pay all contributions owed to one or more of the

other affiliated funds identified in paragraph 7 above for the period of September 2018 forward,

thereby depriving said fund(s) of contributions, income and information needed to administer

said fund(s) and jeopardizing the benefits of the participants and beneficiaries.

22.     The Company has also failed to obtain and maintain a surety bond.

23.     The Company's actions in failing to submit timely reports and contributions and

obtaining and maintaining a surety bond violate Section 515 of ERISA, 29 U.S.C. §1145, and

Section 301 of the LMRA.  29 U.S.C. §185.

24.     Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of

the LMRA, 29 U.S.C. §185, federal common law, and the terms of the Agreement and the

Funds' respective Trust Agreements, the Company is liable to the Funds for unpaid

contributions, as well as interest and liquidated damages on the unpaid contributions,

accumulated liquidated damages, audit costs, reasonable attorneys' fees and costs, and such other

legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against

Defendant Interstate Curb & Concrete Cutting, Inc. as follows:

    a.        ordering the Company to submit benefit reports and pay all contributions for the

time period of September 2018 forward and to submit to an audit upon demand;

    b.        ordering the Company to obtain and maintain a surety bond;

    c.        entering judgment in sum certain against Defendant Company on the amounts due

and owing as pled in the Complaint, and pursuant to the amounts revealed as owing pursuant to

the September 2018 forward reports, if any, and audit if any, including contributions, interest,

liquidated damages, audit costs, and attorneys' fees and costs; and

    d.        awarding Plaintiffs any further legal and equitable relief as the Court deems just

and appropriate.

November 7, 2018                   Laborers' Pension Fund, et al.


                             By: /s/ Amy Carollo
                                Amy Carollo

Amy Carollo
Office of Fund Counsel
111 W. Jackson Blvd., Suite 1415
Chicago, IL 60604
(312) 692-1540

HEADQUARTERS OF

# Construction & General Laborers'
## District Council of Chicago and Vicinity

Affiliated with the Laborers International Union of North America, A.F. of L. - C.I.O. -
6121 WEST DIVERSEY AVENUE - CHICAGO, ILLINOIS 60639 - PHONE: 773-237-7537 - FAX: 773-237-3417

LOCALS 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 269, 288, 582, 681, 1001, 1006, 1035, 1092

### INDEPENDENT CONSTRUCTION INDUSTRY
### COLLECTIVE BARGAINING AGREEMENT

It is hereby stipulated and agreed by and between _Interstate Curl Concrete Cutting Inc_ hereinafter called the "EMPLOYER", and the CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, hereinafter the "UNION", representing and incorporating Local Nos. 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 269, 288, 582, 681, 1001, 1006, 1035, 1092 and successors to the geographical areas of the counties of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry and Boone, in the State of Illinois, together with any other locals which may come within the jurisdiction of the UNION, that:

1. EMPLOYER, in response to the UNION's claim that it represents an uncoerced majority of such EMPLOYEES' employees, acknowledges and agrees that there is no good faith doubt that the UNION has been authorized to and in fact does represent such majority of laborer employees. Therefore, the UNION is hereby recognized as the sole and exclusive collective bargaining representative for the employees now and hereafter employed in the bargaining unit with respect to wages, hours of work and other terms and conditions of employment in accordance with Section 9 of the National Labor Relations Act without the need for a Board certified election.

2. The EMPLOYER affirms and adopts the Collective Bargaining Agreements between the UNION and the Builders Association of Chicago and Vicinity, the Illinois Road Builders Association, the Underground Contractors Association, the Mason Contractors Association of Greater Chicago, the Concrete Contractors Association of Greater Chicago, G.D.C.N.I.C.A.W.C.C., the Lake County Contractors Association, the Fox Valley General Contractors Association, the Chicago Downtown Contractors' Association, and Illinois Environmental Contractors Association, and all of the Associations with whom the District Council or any of its affiliated local unions has a duly negotiated agreement, and re-established at agreements from June 1, 1996 together with all amendments thereto. Where no current Association agreement is negotiated, the terms of the most recent expired agreement are incorporated herein with all terms, conditions and dates extended for the duration hereof, until a current agreement exists that shall be incorporated retroactively herein. It is further agreed that where a contractor works in the jurisdiction of any local UNION, then this Association agreement covering the local UNION's in whose specifically incorporated in this agreement and shall supersede the standard district council agreements to the date of any conflict between the District Council agreement and the Road Association agreement. Nothing herein shall limit the jurisdiction of this Agreement to less than that provided in this Agreement.

3. The EMPLOYER agrees to pay the amounts that it is bound to pay under said Collective Bargaining Agreements to the HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, the LABORERS' PENSION FUND, the CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY TRAINING TRUST FUND, the CHICAGO AREA LABORERS-EMPLOYERS COOPERATION EDUCATION TRUST (LECET), and to all other designated UNION affiliated benefit funds, and to become bound by and be considered a party to the Agreements and Declarations of Trust creating said Trust Funds as if it had signed the original copies of the Trust Instruments and amendments thereto. The EMPLOYER ratifies and confirms the appointment of the EMPLOYER Trustees who shall, together with their successor Trustees, designated in the manner provided in said Agreements and Declaration of Trusts and jointly with an equal number of Trustees appointed by the UNION, carry out the terms and conditions of the Trust Instruments.

The EMPLOYER further affirms and re-establishes that all prior contributions paid to the Welfare, Pension, Training and LECET Funds were made by duly authorized agents of the EMPLOYER at a proper rates, for the appropriate periods of time, and that by making said prior contributions the EMPLOYER evidences the intent to be bound by the terms of the Trust Agreement and Collective Bargaining Agreements which were operative at a time the contributions were made, acknowledging the report form to be a self-adherent instrument in writing to bind the EMPLOYER to the applicable agreements.

4. Employees covered by this Working Agreement shall retain all the work traditionally performed by members of the UNION. The UNION agrees that it will not cause any such traditionally performed work to be done at a construction site by employees other than those covered by this Memorandum of Agreement, except with the prior written consent of the UNION. Any EMPLOYER, whether acting in a contractor, general manager or developer, who contracts out or sublets any of the work coming within the jurisdiction of the UNION, shall assume the obligations of any such subcontractor for prompt payment of employees' wages and other benefits, including reasonable attorneys' fees incurred in enforcing the provisions hereof. Notwithstanding any agreement to the contrary, the EMPLOYER's violation of any provision of this paragraph will give the UNION the right to take any other lawful action, including all remedies at law or equity.

5. In the event of any change in the ownership, management or operation of the EMPLOYER's business by sale or otherwise, it is agreed that as a condition of such transfer or change that a new owner and management shall be fully bound by the terms and conditions of this Agreement. This Agreement is applicable to all successors and transferees of the EMPLOYER, whether corporate or otherwise. The EMPLOYER shall provide ten (10) days prior notice to the UNION of the sale or transfer.

6. The negotiated wages and fringe benefit contribution rates in the various Collective Bargaining Agreements are as follows:

| | |
|---|---|
| June 1, 1998 | $33.35 Per Hour Wages |
| | $ 3.27 Per Hour Health and Welfare Fund |
| to | $ 2.05 Per Hour Pension Fund |
| | $ .10 Per Hour Training Fund (plus additional amounts in Association agreement) |
| May 31, 1999 | $ .02 Per Hour MCAF (if applicable in Association agreement) |
| | $ .02 Per Hour LECET (to be deducted from MCAF if LECET contribution is not provided in Association agreement) |
| | $ .01 Per Hour Chicagoland Safety Council (if applicable) |
| | In addition, the Employer shall pay other amounts if provided in appropriate Association agreements for Industry funds. |
| June 1, 1999 | $ 1.25 Per Hour increase for the year June 1, 1999 through May 31, 2000 to be allocated between wages and fringe benefits by the Union in its sole discretion. |
| to | Welfare, Pension, Training and LECET Funds contributions to remain the same |
| May 31, 2000 | unless additional sums are allocated. |
| June 1, 2000 | $ 1.35 Per Hour increase for the year June 1, 2000 through May 31, 2001, to be allocated between wages and fringe benefits by the Union in its sole discretion. |
| to | Welfare, Pension, Training and LECET Funds contributions remain the same |
| May 31, 2001 | unless additional sums are allocated. |

All additional wage rates, dues checkoff, and fringe benefits that are negotiated or become effective after May 31, 2001, shall be incorporated in this Memorandum of Agreement.

7. Effective June 1, 1998, all EMPLOYERS covered by this Memorandum of Agreement incorporating the various Collective Bargaining Agreements shall deduct from the wages of employees covered by this said contract, uniform working dues in the amount of 1.5% of gross wages, or as determined by the UNION, and shall remit monthly to the UNION office designated by the EMPLOYER by the District Council the sums so deducted, together with an accurate list of employees from whom wages and dues were deducted and the amounts applicable to each employee, not later than the 15th day of the month following the month for which said deductions were made.

8. It is the intention of the parties that such deductions shall comply with the requirements of Section 302(c)(4) of the Labor Management Relations Act of 1947, as amended and such deductions be made only pursuant to written agreements from such assignment which assignment shall not be irrevocable for a period of more than one year or beyond the termination date of the Memorandum of Agreement, whichever occurs sooner.

9. This Agreement shall remain in full force and effect through May 31, 2001 (unless an applicable Association agreement is of longer duration) and shall continue thereafter unless there has been given written notice, by registered or certified mail by either party hereto, received not less than sixty (60) nor more than ninety (90) days prior to the expiration date, of the desire to modify or amend this Agreement through negotiations. In the absence of such notice the EMPLOYER and the UNION agree to be bound by the UNION's area-wide negotiated contracts with the various Associations incorporating them into this Agreement and extending this Agreement for the life of the newly negotiated contracts.

10. The EMPLOYER acknowledges and accepts the facsimile signatures on this contract as if they were the original signatures. The EMPLOYER further acknowledges receipt of a copy of the complete Joint Working Agreement. Upon request of the UNION, the EMPLOYER shall execute another agreement that reflects the final contract settlements incorporated herein.

Dated __May 1st__ month/day __2000__ year

ACCEPTED:

Laborers' Local Union No. __152__

By _J. Michael _____

CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY

By _____
Robert E. Booth, Trustee

For Office Use Only: _I.R.B.A._

_Interstate Curl Concrete Cutting, Inc_
(Employer)

_Steven E. Fredij_
(Print Name and Title)

_____
(Signature)

_1466 Inglewood Ave_
(Address)

_Palatine, IL 60067_
(City, State and Zip Code)

_____
(Telephone)

TRUST FUND

RECEIVED
MAY 0 4 2000
FIELD DEPT

EXHIBIT

INTERSTATE CURB & CONCRETE CUTTING, INC.
1466 N. TANGLEWOOD AVE.
PALATINE, IL 60067

EMPLOYER #22238

JULY 1, 2016 – MARCH 31, 2018





**BK** BANSLEY AND KIENER, L.L.P.
CERTIFIED PUBLIC ACCOUNTANTS

O'HARE PLAZA
8745 WEST HIGGINS ROAD
SUITE 200
CHICAGO, ILLINOIS 60631

TEL: (312) 263-2700
FAX: (312) 263-6935
WWW.BK-CPA.COM

August 14, 2018

Board of Trustees
Pension and Welfare Funds of Construction and General
    Laborers' District Council of Chicago and Vicinity
11465 Cermak Rd.
Westchester, IL 60154

We have applied certain procedures, as discussed below, to the payroll records of Interstate Curb & Concrete Cutting, Inc., a contributing employer to the Pension and Welfare Funds of Construction and General Laborers' District Council of Chicago and Vicinity, for the period July 1, 2016 to March 31, 2018. The purpose of our review was to assist you in determining whether contributions to the Trust Funds are being made in accordance with the collective bargaining agreement in effect and with the Trust Agreement of the Fund. The propriety of the contributions is the responsibility of the employer's management.

Our procedures generally include a review of the pertinent provisions of the collective bargaining agreements and comparing underlying employer payroll records to Fund contribution records. The employer records we review may include payroll journals, individual earnings records, payroll tax returns, contribution reports, job classifications, and general disbursement records. The scope of this engagement is limited to records made available by the employer and would not necessarily disclose all exceptions in employer contributions to the Trust Fund. Any compensation paid to employees not disclosed to us or made part of the written record is not determinable by us and is not included in our review. Any findings are not based upon observations of employees doing actual work.

Our procedures relate to a review of the employer's payroll records only and do not extend to any financial statements of the contributing employer. The procedures were substantially less in scope than an audit of the financial statements of the contributing employer, the objective of which is the expression of an opinion on the contributing employer's financial statements. Accordingly, no such opinion is expressed.

The exceptions to employer contributions are noted on the accompanying report.

MEMBERS: AMERICAN INSTITUTE OF CPA'S • ILLINOIS CPA SOCIETY
AN INDEPENDENT MEMBER OF THE BDO ALLIANCE USA

-2-

The findings of this report should not be construed as an endorsement or ratification of any of the company's contribution practices. The finding is based solely on those documents that the employer provided to the auditors. This firm has not been retained to provide, and does not provide, any interpretation or advice concerning any terms of the collective bargaining agreement between the company and the Union or the terms of the Funds' respective Agreement and Declarations of Trust. All questions concerning the company's contribution practices, or any contributions or benefits-related issue, should be directed to the Union or the Fund office. No failure to note an exception to any of the employer's contribution practices should be construed as a ratification of such practice or waiver of the Union or the Funds' ability to challenge such practice in the future.

This report is not a determination of withdrawal liability owed under the Multi-Employer Pension Plan Amendments Act, 29 U.S.C. Section 1101, et al.

*Bansley and Kiener, L.L.P.*

BANSLEY and KIENER, L.L.P.
Certified Public Accountants

# Laborers' District Council
### Reconciliation of Differences Per Year

| Fiscal Year Ending | | | 5-31 2017 | 5-31 2018 | Total Due |
|---|---|---|---|---|---|
| Fringe Hours Not Reported | | | 111.25 | 10.28 | 121.53 |
| Dues Hours Not Reported | | | 111.25 | 10.00 | 121.25 |
| Wages Not Reported | | | 2,925.00 | 260.00 | 3,185.00 |
| | | | | | |
| Dollar Amount Due | | | | | |
| | | | | | |
| Welfare | | | 1,110.28 | 104.35 | 1,214.63 |
| Retiree Welfare | | | 472.82 | 46.26 | 519.08 |
| Pension | | | 1,287.17 | 126.65 | 1,413.82 |
| Training | | | 55.63 | 5.14 | 60.77 |
| ISPA | | | 8.90 | 0.80 | 9.70 |
| LECET | | | 7.79 | 0.71 | 8.50 |
| LDCLMCC | | | 18.92 | 1.71 | 20.63 |
| Working Dues | | | 109.69 | 9.75 | 119.44 |
| Total | | | 3,071.20 | 295.37 | 3,366.57 |

| | |
|---|---|
| Plus previous liquidated damages assessed by Laborers' Pension and Welfare Funds | 0.00 |
| Plus previous underpayments incurred to Laborers' District Council Funds | 0.00 |
| Plus previous liquidated damages assessed by Laborers' District Council Funds | 0.00 |
| Audit Fee | 1,148.68 |
| Total Amount Due | 4,515.25 |

| | | | |
|---|---|---|---|
| Employer Name - | INTERSTATE CURB & CONCRETE | Person Contacted - | STEVEN R. FRECH |
| Employer - | 22238 | Date of Contact - | JUNE 4, 2018 |
| Date of Audit - | JULY 18, 2018 | Telephone - | 847-776-8030 |
| Audit Period - | JULY 1, 2016 – MARCH 31, 2018 | Auditor - | RACHEL PATTERSON |

# Laborers' District Council

### Reconciliation Between Actual and Reported Hours

| SS# | Name | Rate | | 2016 | | | | | | | | | 2017 | | | Total Hours |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | |
| | HOGABOOM, DAKOTAH | | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 82.75 | 28.50 | 111.25 |
| | | Total | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 82.75 | 28.50 | 111.25 |

| | Rate | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Welfare | $9.98 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 825.85 | 284.43 | 1,110.28 |
| Retiree Welfare | $4.25 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 351.69 | 121.13 | 472.82 |
| Pension | $11.57 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 957.42 | 329.75 | 1,287.17 |
| Training | $0.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 41.38 | 14.25 | 55.63 |
| ISPA | $0.08 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 6.62 | 2.28 | 8.90 |
| LECET | $0.07 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5.79 | 2.00 | 7.79 |
| LDCLMCC | $0.17 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 14.07 | 4.85 | 18.92 |
| Working Dues | 3.75% | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 81.90 | 27.79 | 109.69 |
| Total | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,284.72 | 786.48 | 3,071.20 |

Employer Name - INTERSTATE CURB & CONCRETE

Employer - 22238

Date of Audit - JULY 18, 2018

Audit Period - JULY 1, 2016 - MARCH 31, 2018

Person Contacted - STEVEN R. FRECH

Date of Contact - JUNE 4, 2018

Telephone - 847-776-8030

Auditor - RACHEL PATTERSON

4

# Laborers' District Council

## Reconciliation Between Actual and Reported Gross Wages

| SS# | Name | | Jun | Jul | Aug | 2016 Sep | Oct | Nov | Dec | Jan | Feb | 2017 Mar | Apr | May | Total Wages |
|-----|------|--|-----|-----|-----|----------|-----|-----|-----|-----|-----|----------|-----|-----|-------------|
| | HOGABOOM, DAKOTAH | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,184.00 | 741.00 | 2,925.00 |
| | | Total | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,184.00 | 741.00 | 2,925.00 |

Rate - 3.75% of gross wages

| | | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total |
|-|-|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-------|
| Dues | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 81.90 | 27.79 | 109.69 |

| | |
|-|-|
| Employer Name - INTERSTATE CURB & CONCRETE | Person Contacted - STEVEN R. FRECH |
| Employer - 22238 | Date of Contact - JUNE 4, 2018 |
| Date of Audit - JULY 18, 2018 | Telephone - 847-776-8030 |
| Audit Period - JULY 1, 2016 - MARCH 31, 2018 | Auditor - RACHEL PATTERSON |

5

# Laborers' District Council

Reconciliation Between Actual and Reported Hours - Welfare, Retiree Welfare, Pension, & Training Funds

| SS# | Name | Rate | 2017 | | | | | | | 2018 | | | | | Total Hours |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | |
| | CIPEK, CONRAD | | 0.00 | 0.28 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.28 |
| | HOGABOOM, DAKOTAH | | 5.50 | 4.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.00 |
| | | Total | 5.50 | 4.78 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.28 |

| | Rate | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total Hours |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Welfare | $10.15 | 55.83 | 48.52 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 104.35 |
| Retiree Welfare | $4.50 | 24.75 | 21.51 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 46.26 |
| Pension | $12.32 | 67.76 | 58.89 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 126.65 |
| Training | $0.50 | 2.75 | 2.39 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5.14 |
| Total | | 151.09 | 131.31 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 282.40 |

Employer Name - INTERSTATE CURB & CONCRETE

Employer - 22238

Date of Audit - JULY 18, 2018

Audit Period - JULY 1, 2016 - MARCH 31, 2018

Person Contacted - STEVEN R. FRECH

Date of Contact - JUNE 4, 2018

Telephone - 847-776-8030

Auditor - RACHEL PATTERSON

# Laborers' District Council

## Reconciliation Between Actual and Reported Hours - ISPA, LECET, & LDCLMCC Funds

| SS# | Name | Rate | 2017 | | | | | | | 2018 | | | | | Total Hours |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | |
| | CIPEK, CONRAD | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | HOGABOOM, DAKOTAH | | 5.50 | 4.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.00 |
| | Total | | 5.50 | 4.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.00 |

| | Rate | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ISPA | $0.08 | 0.44 | 0.36 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.80 |
| LECET | $0.07 | 0.39 | 0.32 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.71 |
| LDCLMCC | $0.17 | 0.94 | 0.77 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1.71 |
| Working Dues | 3.75% | 5.36 | 4.39 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 9.75 |
| Total | | 7.13 | 5.84 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 12.97 |

Employer Name - INTERSTATE CURB & CONCRETE

Employer - 22238

Date of Audit - JULY 18, 2018

Audit Period - JULY 1, 2016 - MARCH 31, 2018

Person Contacted - STEVEN R. FRECH

Date of Contact - JUNE 4, 2018

Telephone - 847-776-8030

Auditor - RACHEL PATTERSON

# Laborers' District Council
### Reconciliation Between Actual and Reported Gross Wages

| SS# | Name | 2017 Jun | Jul | Aug | Sep | Oct | Nov | Dec | 2018 Jan | Feb | Mar | Apr | May | Total Wages |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | CIPEK, CONRAD | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | HOGABOOM, DAKOTAH | 143.00 | 117.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 260.00 |
| | Total | 143.00 | 117.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 260.00 |

Rate - 3.75% of gross wages

| Dues | 5.36 | 4.39 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 9.75 |

Employer Name - INTERSTATE CURB & CONCRETE
Employer - 22238
Date of Audit - JULY 18, 2018
Audit Period - JULY 1, 2016 - MARCH 31, 2018

Person Contacted - STEVEN R. FRECH
Date of Contact - JUNE 4, 2018
Telephone - 847-776-8030
Auditor - RACHEL PATTERSON

8

LABORERS' PENSION & WELFARE FUNDS

SUMMARY OF AMOUNTS OWED

AUDIT

EMPLOYER   INTERSTATE CURB & CONCRETE CUTTING, INC.                CODE  22238

FOLLOWING ARE THE FIGURES OWED BY THE ABOVE MENTIONED CONTRACTOR AS A RESULT OF THE AUDIT.

7-1-16 - 3-31-18

| PERIOD | HOURS | WELFARE | RATE | RETIREE WELFARE | RATE | PENSION | RATE | TRAINING FUND | RATE | DUES | LDCLMCC | RATE | ISPA | RATE | LECET | RATE | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 7-1-16 - 5-31-17 | 111.25 | 1,110.28 | 9.98 | 472.82 | 4.25 | 1,287.17 | 11.57 | 55.63 | 0.50 | 109.69 | 18.92 | 0.17 | 8.90 | 0.08 | 7.79 | 0.07 | 3,071.20 |
| 6-1-17 - 3-31-18 | 10.28 | 104.35 | 10.15 | 46.26 | 4.50 | 126.65 | 12.32 | 5.14 | 0.50 | | | | | | | | 282.40 |
| 6-1-17 - 3-31-18 | 10.00 | | | | | | | | | 9.75 | 1.71 | 0.17 | 0.80 | 0.08 | 0.71 | 0.07 | 12.97 |
| SUBTOTAL | 131.53 | 1,214.63 | | 519.08 | | 1,413.82 | | 60.77 | | 119.44 | 20.63 | | 9.70 | | 8.50 | | 3,366.57 |
| 10% LIQUIDATED DAMAGES | | | | | | | | | | 11.94 | 2.06 | | 0.97 | | 0.85 | | 15.82 |
| 20% LIQUIDATED DAMAGES | | 242.93 | | 103.82 | | 282.76 | | 12.15 | | | | | | | | | 641.66 |
| AUDIT COSTS | | 390.55 | | 379.06 | | 379.07 | | | | | | | | | | | 1,148.68 |
| ATTORNEY FEES | | | | | | | | | | | | | | | | | |
| ACCUM. LIQUIDATED DAMAGES | | | | | | | | | | | | | | | | | |
| ACCUM. INTEREST | | 180.32 | | 77.02 | | 209.77 | | 9.02 | | | 3.06 | | 1.44 | | 1.26 | | 481.89 |
| TOTAL DUE | | 2,028.43 | | 1,078.96 | | 2,285.42 | | 81.94 | | 131.38 | 25.75 | | 12.11 | | 10.61 | | 5,654.62 |



EXHIBIT